Case No. 15-17510

————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

CENTER FOR FOOD SAFETY, *et al.*,
*Plaintiffs-Appellants*,

v.

MARGARET HAMBURG, *et al.*,
*Defendants-Appellees*,

ELANCO ANIMAL HEALTH,
*Intervenor-Defendant-Appellee*.

————————————

On Appeal from the U.S. District Court for the Northern District of California
Case Nos. 4:14-cv-04932-YGR, 4:14-cv-04933-YGR
Judge Yvonne Gonzalez Rogers

————————————

**BRIEF OF *AMICUS CURIAE* ANIMAL HEALTH INSTITUTE
IN SUPPORT OF FEDERAL APPELLEES AND
ELANCO ANIMAL HEALTH, AND AFFIRMANCE**

<div style="margin-left:40%">

Phil Goldberg
Cary Silverman
SHOOK, HARDY & BACON L.L.P.
1155 F Street NW, Suite 200
Washington, D.C. 20004
Tel: (202) 783-8400
Fax: (202) 783-4211
pgoldberg@shb.com
csilverman@shb.com

*Counsel for Amicus Curiae*
*Animal Health Institute*

</div>

August 19, 2016

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the Animal Health Institute (AHI) hereby certifies that it has no parent corporation, and that no publically held corporation owns more than ten percent of AHI.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

IDENTITIES AND INTERESTS OF *AMICUS CURIAE* ......................................... 1

SUMMARY OF ARGUMENT ............................................................... 2

ARGUMENT ........................................................................... 5

    I.     CONCERNS WITH ANIMAL DRUG APPROVALS MUST BE BROUGHT TO FDA'S ATTENTION THROUGH THE CITIZEN PETITION PROCESS BEFORE A LAWSUIT CAN BE FILED ....... 5

    II.    THE CITIZEN PETITION PROCESS ALLOWS FDA TO TIMELY AND THOROUGHLY ADDRESS PUBLIC CONCERNS ......................................................... 11

          A.    There Are Many Examples of FDA Responding to Citizen Petitions Raising Complex Issues of Science and Policy in a Detailed and Timely Fashion .................................. 12

          B.    Congress Is the Proper Venue for Raising Concerns that the FDA Citizen Petition Process Is In Need of Repair ........... 16

    III.    IF THIS ACTION IS ALLOWED, THE JUDICIARY, NOT THE AGENCIES, WOULD BECOME THE "FIRST DECIDER" FOR MANY REGULATORY MATTERS .................... 18

CONCLUSION ......................................................................... 21

CERTIFICATE OF COMPLIANCE ......................................................... 22

CERTIFICATE OF SERVICE ............................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Astiana v. Hain Celestrial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ...................... 19

*Beyond Pesticides/Nat'l Coalition Against the Misuse of Pesticides v. Johnson*, 407 F. Supp.2d 38 (D.D.C. 2005) .................................................... 8

*Biotics Research Corp. v. Heckler*, 710 F.2d 1375 (9th Cir. 1983) ............ 11, 18-19

*Conn. v. Am. Elec. Power Co.*, 564 U.S. 410 (2011) ............................................... 19

*Darby v. Cisnero*, 509 U.S. 137 (1993) ................................................................... 7

*Dietary Supplemental Coalition, Inc. v. Sullivan,* 978 F.2d 560 (9th Cir. 1992) ................................................................ 11, 18

*In re: Am. Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) .............. 8

*In re Pesticide Action Network N. Am. v. EPA,* 798 F.3d 809 (9th Cir. 2015) .......... 8

*Kane v. Chobani, LLC,* No. 14-15670, 2016 WL 1161782 (9th Cir. Mar. 24, 2016) ........................ 19

*McKart v. United States*, 395 U.S. 185 (1969) ....................................................... 10

*Nat'l Res. Def. Council v. FDA*, 760 F.3d 151 (2d Cir. 2014) .................................. 8

*Pub. Citizen Health Research Grp. v. Comm'r, FDA,* 740 F.2d 21 (D.C. Cir. 1984) ......................................................................... 7

*United States v. Argent Chem. Labs.*, 93 F.3d 572 (9th Cir. 1996) ......................... 5

*United States v. 9/1 Kg. Containers*, 854 F.2d 173 (7th Cir. 1988) ........................ 6

*Weinberger v. Hynson, Wescott & Dunning, Inc.*, 412 U.S. 609 (1973) .................. 5

**Statutes**

5 U.S.C. § 704 .................................................................................................7

5 U.S.C. § 706 .................................................................................................7

18 U.S.C. § 1905 .............................................................................................9

21 U.S.C. §§ 301 et seq. ..................................................................................5

21 U.S.C. § 331 ...............................................................................................9

21 U.S.C. § 343 .............................................................................................17

21 U.S.C. § 355 ........................................................................................16, 17

21 U.S.C. § 360b .........................................................................................9, 17

42 U.S.C. §§ 4321 *et seq.* ...............................................................................5

Food and Drug Administration Amendments Act (FDAAA) of 2007,
　　Pub. L. No. 110-85, 1212 Stat. 823 (2007) ..................................................16

Food and Drug Administration Safety and Innovation Act,
　　Pub. L. No. 112-144, 126 Stat. 993 (2012) ..................................................17

Generic Animal Drug and Patent Term Restoration Act,
　　Pub. L. No. 100-670, 102 Stat. 3971 (1988) .................................................17

**Regulations**

21 C.F.R. §§ 1.1 et seq. ...................................................................................5

21 C.F.R. § 10.25 ............................................................................................6

21 C.F.R. § 10.30 ........................................................................................6, 11

21 C.F.R. § 25.33 ..........................................................................................10

21 C.F.R. § 25.50 ............................................................................................9

21 C.F.R. § 514.1 .........................................................................................5, 9

21 C.F.R. § 514.105 ...................................................................................9

73 Fed. Reg. 72,714 (Dec. 1, 2008) .....................................................10

77 Fed. Reg. 25 (Jan. 3, 2012) .....................................................16, 17

80 Fed. Reg. 69,905 (Nov. 12, 2015).......................................................13

**Other Authorities**

Am. Health Inst., *Pharmaceuticals*, *available at* http://www. ahi.org/about-animal-medicines/pharmaceuticals/ (last visited Aug. 17, 2016)...................6

Citizen Petition, Fluoride Action Network, Docket No. FDA-2016-P-1288-0001 (May 16, 2016), *available at* https://www.regulations.gov/document?D=FDA-2016-P-1288-0001 .........................................................21

Citizen Petition, Leana Wen et al., Docket No. FDA-2016-P-0689-0001 (Feb. 22, 2016), *available at* https://www.regulations.gov/document?D=FDA-2016-P-0689-0001 .........................................................21

Citizen Petition, Public Citizen Health Research Group, Docket No. FDA-2016-P-1874-0001 (June 29, 2016), *available at* https://www.regulations.gov/document?D=FDA-2016-P-1874-0001 .....................20

Docket No. FDA-2014-N-1207 (Nov. 12, 2015), *available at* https://www.regulations.gov/document?D=FDA-2014-N-1207-0001 .........13

FDA, *Environmental Impact Considerations*, *available at* http://www.fda.gov/AnimalVeterinary/DevelopmentApprovalProcess/EnvironmentalAssessments/ (last updated July 22, 2016) ..............................9

FDA Letter to James Flory et al., Docket Nos. FDA-2012-P-1052, FDA-2013-P-0298 (Apr. 8, 2016), *available at* https://www.regulations.gov/document?D=FDA-2014-P-0405-0012..........12

FDA Letter to James M. Love et al., Docket No. FDA-2009-P-0610 (Jan. 27, 2015), *available at* https://www.regulations.gov/document?D=FDA-2014-P-0908-0005 ................................................................. 13–14

FDA Letter to Terence J. Mix, Docket No. FDA-2007-P-0234 (Sept. 9, 2009), *available at* https://www.regulations.gov/document?D=FDA-2007-P-0234-0006 ........................................................................................................14

FDA Letter to Terence J. Mix, Docket No. FDA-2007-P-0234 (Mar. 12, 2012), *available at* https://www.regulations.gov/document?D=FDA-2007-P-0234-0014 ................................................................................... 14-15

FDA Letter to James P. Reichmann, Docket No. FDA-2013-P-0048 (Oct. 27, 2015), *available at* https://www.regulations.gov/document?D= FDA-2013-P-0048-0009 ..................................................................................14

FDA Letter to Ken Surprenant, Dockets No. FDA-2014-P-0405, FDA-2014-P-0497 (July 29, 2016), *available at* https://www.regulations.gov/document?D=FDA-2014-P-0405-0012 .... 12-13

FDA Letter to Michael Welber, Docket No. FDA-2015-P-1433 (Aug. 5, 2016), *available at* https://www.regulations.gov/document?D=FDA-2007-P-0234-0014 ........................................................................................15

FDA, Seventh Annual Report on Delays in Approvals of Applications Related to Citizen Petitions and Petitions for Stay of Agency Action for Fiscal Year 2014 (Aug. 23, 2015), *at* http://www.fda. gov/ downloads/AboutFDA/CentersOffices/OfficeofMedicalProductsand Tobacco/CDER/ReportsBudgets/UCM464282.pdf ................................ 17-18

FDA, *From an Idea to the Marketplace: The Journey of an Animal Drug through the Approval Process*, *at* http://www.fda.gov/Animal Veterinary/ResourcesforYou/AnimalHealthLiteracy/ucm219207.htm (last updated Dec. 8, 2015) ............................................................................9

Hyman, Phelps & McNamara PC, FDA Citizen Petition Tracker, FDA Law Blog (last updated Aug. 12, 2016), *at* http://www.fdalawblog.net/fda_ law_blog_hyman_phelps/files/CPTracker.xls ........................................ 19-20

N. Am. Meat Inst., *Growth Promotants in Meat Production: Their Use and Safety*, (Aug. 2013), *available at* https://www.meatinstitute.org/ index.php?ht=a/GetDocumentAction/i/83421 ................................................4

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

The Animal Health Institute (AHI) represents companies with an interest in veterinary health. AHI members develop and produce the medicines that help companion animals live longer, healthier lives and contribute to the safe, affordable production of food by keeping livestock animals healthy. Since its inception in 1941, AHI and its members have helped create an environment that fosters robust research and development of innovative and needed animal medicines. AHI member companies further the discovery, development and approval of medicines that promote animal health in a research-driven industry.

Science-based review of products and continued research and development in the area of animal health are the hallmarks of the drug approval process. AHI represents its members by advocating for animal health issues, including efficient and effective regulatory oversight. This case is of concern to AHI and its members because permitting advocacy groups to challenge the U.S. Food and Drug Administration's (FDA) approval of a veterinary drug in court without first approaching FDA would circumvent the lengthy, expensive and science-based regulatory process that allows agency experts to balance the multiple factors that

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c), no party's counsel authored this brief in whole or in part. No party, nor any party's counsel, nor any person other than AHI, its members, or its counsel contributed money intended to fund preparing or funding this brief.

go into determining whether a particular animal drug is beneficial to the public and, therefore, should be approved.

## INTRODUCTION AND SUMMARY OF ARGUMENT

When any entity, including Plaintiff advocacy groups, seeks to raise new concerns about the safety or efficacy of an approved drug, it must present its allegations and supporting science-based evidence to FDA before it can pursue an action in court. FDA has a long-established citizen petition process specifically for the purpose of considering this information. The role of the courts is to assure that FDA adheres to this process. By contrast, Plaintiffs are asking the court to immediately suspend or ban use of an approved drug as a matter of first impression. If the Court allows this suit to proceed, the judiciary could overturn a drug's FDA approval, which resulted from a scientifically-rigorous and lengthy process, based on a narrow set of allegations that were never shared with FDA.

Here, Plaintiff advocacy groups and their *amici* professors, assert that the required citizen petition process need not be followed when challenging FDA's approval of a drug under the National Environmental Protection Act (NEPA). They argue that Plaintiffs can leapfrog over agency review, have a judge vacate the FDA's approvals, and stop farmers from using the drugs until FDA revisits the adequacy of its environmental assessment in light of their new allegations. The District Court properly held that Congress explicitly prohibited such actions in the

Administrative Procedure Act (APA), which requires that parties exhaust administrative remedies before courts have jurisdiction over challenges to agency action. This exhaustion requirement applies to allegations raised upon an initial approval and those, as here, brought several years after an approval and may include later-emerging data. It provides important legal and practical safeguards by assuring that the same scientific rigors are applied to allegations as to approvals, that FDA can self-correct errors, and that, should judicial review ultimately be warranted, there is an administrative record for the court to evaluate.

Allowing Plaintiffs to circumvent FDA regulatory review here would have troubling consequences for animal and human health. FDA and applicants invest enormous time and resources into ensuring that a drug is safe and effective for animals and humans, and does not harm the environment. Ractopamine, which is a feed-additive, has undergone this rigorous review. FDA must also be allowed to evaluate Plaintiffs' concerns in context of the important benefits that a drug provides. Here, ractopamine significantly benefits animals, farmers, consumers and the environment by enhancing the welfare of certain livestock and allowing farmers to produce quality food at lower prices.[2] Plaintiffs have not demonstrated

---

[2] *See* N. Am. Meat Inst., *Growth Promotants in Meat Production: Their Use and Safety* (Aug. 2013), *available at* https://www.meatinstitute.org/index.php?ht=a/Get DocumentAction/i/83421.

the validity of their claims, but if merited, FDA's response to the allegations would be considered in the context of these benefits to determine appropriate mitigation.

Allowing Plaintiffs' action would also suggest that FDA review can be circumvented whenever one believes a faster response can be achieved through the courts or that the judiciary is more likely to provide a favorable outcome than FDA. The citizen petition process, as with FDA approvals, cannot mandate a specific outcome. *Amicus* appreciates that Plaintiffs may be frustrated with aspects of this process, but such frustrations are not unique to them, FDA or NEPA. These frustrations also cannot be the basis for subverting the regulatory process, and, as discussed below in response to the professors' *amici* brief, FDA has proven its ability to respond to citizen petitions in timely, scientifically-grounded ways, including with respect to environmental concerns raised under NEPA. If Plaintiffs file a citizen petition, and FDA does not rule timely or substantively in their favor, then they can file an action to require FDA to adhere to this process and assure that FDA's substantive conclusions are not arbitrary and capricious.

*Amicus* urges the Court to affirm the district court's order that the prudent course—and the one demanded by law—is to require Plaintiffs to provide FDA with the opportunity to administratively consider and resolve their concerns.

## ARGUMENT

## I. CONCERNS WITH ANIMAL DRUG APPROVALS MUST BE BROUGHT TO FDA'S ATTENTION THROUGH THE CITIZEN PETITION PROCESS BEFORE A LAWSUIT CAN BE FILED

This lawsuit undermines FDA's New Animal Drug Application (NADA) and citizen petition processes, which are the mechanisms the agency uses to assess the benefits and risks of animal medicines. The veterinary drug industry is already "closely regulated." *United States v. Argent Chem. Labs.*, 93 F.3d 572, 575 (9th Cir. 1996). Congress has entrusted the approval and withdrawal of new animal drugs to FDA, *see* 21 U.S.C. §§ 301 *et seq.*, and FDA has promulgated extensive regulations implementing this authority. *See* 21 C.F.R. §§ 1.1 *et seq.* Courts have long recognized that the FDA's drug approval process is scientifically "rigorous," *Weinberger v. Hynson, Wescott & Dunning, Inc.*, 412 U.S. 609, 630 (1973), and reflects FDA's "substantial interest in ensuring the safety and effectiveness of animal drugs." *Argent Chem. Labs.*, 93 F.3d at 576. This review includes extensive analyses of a drug's potential environmental impact under NEPA. *See* 21 C.F.R. § 514.1(b)(14); 42 U.S.C. §§ 4321 *et seq.*

Complying with FDA's approval process for animal drugs constitutes a massive expenditure of private and public resources. "Obtaining approval takes a long time and costs a lot of money, for the FDA requires thorough experimentation to determine both the drug's effects on animals and whether its residues persist in

the animals and enter the food chain." *United States v. 9/1 Kg. Containers*, 854 F.2d 173, 174 (7th Cir. 1988). A recent survey of animal health companies conducted for AHI indicates that the average time for an animal health drug approval is 6.7 to 8.5 years. *See* Am. Health Inst., *Pharmaceuticals*, *available at* http://www.ahi.org/about-animal-medicines/pharmaceuticals/ (last visited Aug. 19, 2016). Manufacturers' costs have been reported as high as $62 million, with average costs of $30.5 million for a pharmaceutical product with a new active ingredient. *See id.*

FDA has established the citizen petition process as the means for the public to bring any concerns they have about a drug approval to the agency's attention. 21 C.F.R. § 10.25(a); *see also* 21 C.F.R. § 10.30 (providing requirements for citizen petitions and applying it to a wide-range of agency actions for animal and human drug approvals). It is how FDA learns of concerns and obtains information from the public counter to those developed during a drug's approval. FDA applies its expertise to these concerns, responds to petitions, and takes action when warranted, but only after—not before as sought here—the new data and arguments are subjected to rigorous review. The NADA-citizen petition process provides a thorough means for FDA to properly regulate animal drugs.

Both Congress and FDA, through the APA and corresponding regulations, require that the citizen petition process be administratively exhausted before an

agency action, including a new drug approval, can be challenged in court.[3]  This

requirement serves several important purposes.  It ensures that individuals or

groups cannot "flout established administrative processes" that Congress intended

to be followed.  *Pub. Citizen Health Research Grp. v. Comm'r, FDA*, 740 F.2d 21,

29 (D.C. Cir. 1984). "[I]t protects the autonomy of agency decisionmaking." *Id.*

at 29.  "[I]t aids judicial review by permitting factual development in an agency

proceeding," and "it serves judicial economy by avoiding needless repetition of

administrative and judicial factfinding and by perhaps avoiding the necessity of

any judicial involvement if the parties successfully vindicate their claims before

the agency." *Id.*

The role for the court is to be the guardian of this process, not to allow the

public to circumvent it.  If an individual, advocacy group, or business brings a

concern to the FDA's attention through the citizen petition process and FDA does

not properly respond, or denies the petition, courts can "compel agency action

unlawfully withheld or unreasonably delayed" or set aside agency action when it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law." 5 U.S.C. § 706(1), (2)(A).  The purpose of judicial review is to ensure FDA

---

[3] The APA provides that before challenging an administrative action, an individual
or group must exhaust its administrative remedies.  5 U.S.C. § 704.  The APA does
not mandate a process by which a party must exhaust administrative remedies, but
allows agencies to establish a procedure for internal consideration before
authorizing judicial review. *See Darby v. Cisnero*, 509 U.S. 137, 153 (1993).

fulfills its statutory and regulatory duties, and properly considers issues raised by a petitioner. *See, e.g., In re Pesticide Action Network N. Am. v. EPA,* 798 F.3d 809 (9th Cir. 2015) (establishing a six-factor "TRAC" test for determining whether judicial intervention is warranted in response to agency inaction).[4] Courts have given agency findings considerable deference, unlike Plaintiffs' attempt here to have the Court set aside FDA approvals on allegations never presented to the agency. *Nat'l Res. Def. Council v. FDA*, 760 F.3d 151 (2d Cir. 2014) ("It is not for us to determine whether the agency has been prudent or imprudent, wise or foolish, effective or ineffective in its approach to this problem.").

Allegations that NADAs and citizen petitions do not subject government NEPA decisions to sufficient scrutiny because applicants provide the preliminary data for the review and the process is initially confidential are red herrings. As FDA makes clear both publicly and in private meeting with applicants, "FDA is ultimately responsible for the scope and content" of a NEPA review and undertakes this review in close coordination with the Council of Environmental

---

[4] Other courts have taken similar actions. *See, e.g., In re: Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419-20 (D.C. Cir. 2004) (calling Federal Energy Regulatory Commission 6-year delay in responding to a petition raising threats to endangered species "nothing less than egregious" and requiring a response within 45 days). *But cf. Beyond Pesticides/Nat'l Coalition Against the Misuse of Pesticides v. Johnson*, 407 F. Supp.2d 38, 41 (D.D.C. 2005) (finding EPA's "slow, but deliberate, pace" in responding to petitions seeking suspension or cancellation of wood preservatives did not warrant judicial intervention).

Quality to ensure thoroughness.[5]   Congress requires this process to remain confidential because it involves valuable trade secrets.  *See* 18 U.S.C. § 1905; 21 U.S.C. § 331(j); 21 C.F.R. § 25.50.  The animal health industry, like the human health industry, is dynamic and competitive.  At the conclusion of the review process, FDA explains why it found the product is safe or not shown to be safe, or if conditions are required for the drug's safe use.  *See* 21 C.F.R. § 514.105(a).

FDA publishes all approvals in the Federal Register and makes available underlying documents, including for environmental impacts, to ensure that the public, including advocacy groups such as Plaintiffs and competitors, can learn of FDA's action and reasoning.  The final safety evaluation considers each factor, not in isolation, but in context of a drug's entire benefit-risk profile.  It includes scientific analysis of its safety for the animal, of the food products derived from the animal, to persons administering the drug or otherwise associated with the animal, and, of the drug's impact on the environment.  *See* 21 U.S.C. § 360b(c); 21 C.F.R. § 514.1.[6]  This is what occurred here.  FDA approved a ractopamine product for

---

[5]  *See* FDA, *Environmental Impact Considerations*, *available at* http://www.fda.gov/AnimalVeterinary/DevelopmentApprovalProcess/Environmental Assessments/ (last updated July 22, 2016) (detailing the Center for Veterinary Medicine's NEPA review process).

[6] A multi-disciplinary FDA team – veterinarians, animal scientists, biostatisticians, chemists, microbiologists, pharmacologists, and toxicologists – reviews a NADA. FDA, *From an Idea to the Marketplace: The Journey of an Animal Drug through the Approval Process*, *at* http://www.fda.gov/AnimalVeterinary/ResourcesforYou/AnimalHealthLiteracy/ucm219207.htm (last updated Dec. 8, 2015).

use in turkeys and found no significant environmental impact, which it made available for public review. *See* 73 Fed. Reg. 72,714, 72,715 (Dec. 1, 2008).[7]

The Court should not undermine the NADA-citizen petition process by allowing individuals, advocacy groups, or competitors to raise objections to FDA's approval of new animal drugs by first bringing allegations to the courts. Because Plaintiffs have not used the citizen petition process here at all, the Court is without an administrative record as to FDA's response to Plaintiffs' allegations. It cannot assess whether the agency would have revoked approval of the animal drugs at issue, changed the drugs' conditions of use, or denied the petition. Thus, there is no determination to adjudge as arbitrary and capricious or inaction to pronounce as unreasonably delayed. FDA must have the "first chance" to apply its discretion and scientific expertise to Plaintiffs' allegations before the courts have jurisdiction. *See McKart v. United States*, 395 U.S. 185, 194 (1969) ("[I]t is normally desirable to let the agency develop the necessary factual background upon which decisions should be based."). Sue first, ask questions later is not sound governance.

---

[7] FDA relied on its earlier environmental findings in approving subsequent applications of ractopamine. *See* 21 C.F.R. § 25.33(a)(2) (providing categorical exclusion that exempts preparation of environmental assessment or environmental impact statement when proposed animal drug is a combination of previously approved animal drugs); Elanco Animal Health Br. at 15 n.8.

## II. THE CITIZEN PETITION PROCESS ALLOWS FDA TO TIMELY AND THOROUGHLY ADDRESS PUBLIC CONCERNS

The FDA citizen petition process is certainly not without its warts. *Amicus* and its members are both filers and targets of citizen petitions. But, it is not, as Plaintiffs and *amici* professors contend, an exercise in futility that can be disregarded.[8] Sometimes FDA approves or denies a petition within the 180-day time period for an initial response, and other times FDA issues an interim response indicating why it needs more time to resolve the issues raised in the petition. 21 C.F.R. § 10.30 (e)(2)(iii). Plaintiffs and *amici* professors may view such interim letters as "boilerplate" and too frequent, but interim responses are needed when petitions raise complex issues of science or public policy and require careful consideration. Given the lengthy process FDA undertakes to approve a drug, it would be more concerning if FDA were to grant or deny a petition seeking revocation of an animal drug approval in an artificially short timeframe.

---

[8] This Court has held that such assertions provide "insufficient justification for bypassing agency expertise and invoking the jurisdiction of the federal courts." *Dietary Supplemental Coalition, Inc. v. Sullivan*, 978 F.2d 560, 564 (9th Cir. 1992); *see also Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983) (rejecting Plaintiffs assertion that available FDA administrative remedies were "inadequate and not efficacious" or "futile").

**A.     There Are Many Examples of FDA Responding to Citizen Petitions Raising Complex Issues of Science and Policy in a Detailed and Timely Fashion**

Even when citizen petitions raise complex issues of science and public policy, FDA has provided timely, thorough responses, sometimes granting them, sometimes denying them, and sometimes initiating rule making proceedings as a direct result of them.  Regulated entities, including our members and affiliated companies, have been both pleased and displeased with such actions.

Take, for example, two recent citizen petitions where FDA granted the desired relief.  Earlier this year, FDA changed the labeling of metformin, a drug used to treat diabetes, as a result of citizen petitions filed by physicians and researchers at Cornell and Yale Universities.  *See* FDA Letter to James Flory et al., Docket Nos. FDA-2012-P-1052, FDA-2013-P-0298 (Apr. 8, 2016).[9]  FDA took this action based on scientific literature in the petition alleging the drug posed certain risks to patients with renal impairment.  *See id.*  FDA issued its 33-page response within three years of the filing of the petitions and instructed manufacturers of the drug to make the changes to their labeling.  *See id.*  This year, FDA also changed prescribing information for two drugs used to treat cancer, Fluorouracil Injection and Xeloda, in response to citizen petitions filed in 2014 that

---

[9] *Available at* https://www.regulations.gov/document?D=FDA-2014-P-0405-0012.

raised allegations of toxic reactions in certain patients. *See* FDA Letter to Ken Surprenant, Dockets No. FDA-2014-P-0405, FDA-2014-P-0497 (July 29, 2016).[10]

In another recent response to citizen petitions, FDA initiated a rule-making when it opened a public comment period on the use of the term "natural" on food labeling. *See* 80 Fed. Reg. 69,905 (Nov. 12, 2015). It did so as a result of four citizen petitions asking FDA to address the issue. *See id.* at 69,906-08 (discussing petitions filed by the Grocery Manufacturers Association, Consumers Union, Sara Lee Corp., and The Sugar Association). FDA has received more than 3,500 public comments on the issue. *See* Docket No. FDA-2014-N-1207 (Nov. 12, 2015).[11] The petitions raised complex public policy issues requiring public input and study before the agency can provide competent guidance on the substantive issues.

FDA has also rejected citizen petitions. Sometimes, the single issued raised by the petitioner would disturb FDA's careful balancing of science and policy. For example, FDA undertook a four-and-a-half year review of allegations that dental amalgam, a restorative material that contains encapsulated mercury, could pose health or environmental risks. *See* FDA Letter to James M. Love et al., Docket

---

[10] *Available at* https://www.regulations.gov/document?D=FDA-2014-P-0405-0012.

[11] *Available at* https://www.regulations.gov/document?D=FDA-2014-N-1207-0001.

No. FDA-2009-P-0610 (Jan. 27, 2015).[12]  In a 48-page response, FDA found that a weighing of the risks and benefits of dental amalgam did not warrant banning encapsulated mercury fillings or restricting their use in children.  *See id.*

Other times, petitions have not been supported by sound science.  In 2015, FDA responded to a petition filed in 2013 and supplemented throughout 2014 and 2015 requesting a change in the labeling of Zofran, a drug used to treat severe nausea and vomiting.  *See* FDA Letter to James P. Reichmann, Docket No. FDA-2013-P-0048 (Oct. 27, 2015).[13]  In a 20-page analysis, FDA explained why the scientific literature, adverse event reporting, and other data did not support altering the label.  *See id.*  Similarly, FDA denied a citizen petition requesting FDA to alter labeling of Clomid, a drug commonly prescribed for fertility problems.  *See* FDA Letter to Terence J. Mix, Docket No. FDA-2007-P-0234 (Sept. 9, 2009).[14]  After a two-year review, FDA issued a 15-page analysis on why scientific evidence did not support the warnings requested in the petition.  *See id.*  The petitioner submitted a petition for reconsideration in October 2009 with supplemental information, which FDA denied after reaffirming that its earlier decision was founded upon reliable

---

[12]  *Available at* https://www.regulations.gov/document?D=FDA-2014-P-0908-0005.

[13]  *Available at* https://www.regulations.gov/document?D=FDA-2013-P-0048-0009.

[14]  *Available at* https://www.regulations.gov/document?D=FDA-2007-P-0234-0006.

scientific evidence, including epidemiology studies.  *See* FDA Letter to Terence J. Mix, Docket No. FDA-2007-P-0234 (Mar. 12, 2012).[15]

FDA has also thoroughly and promptly responded to citizen petitions raising environmental concerns, as Plaintiffs raise here.  For example, just this month, FDA responded to a petition requesting that it prepare an environmental impact statement (EIS) for a company's field trial of a genetically modified mosquito in the Florida Keys.  *See* FDA Letter to Michael Welber, Docket No. FDA-2015-P-1433 (Aug. 5, 2016).[16]  After providing an interim letter after six months, the agency followed up a full response within 15 months of the petition's filing.  In denying the petition, FDA explained in detail why it found that the field trial would not have a significant impact on the environment.  *See id.*  FDA addressed the scientific research raised in the petition, showed how it gathered feedback from other agencies, experts in mosquitos, and the public, and explained how its action complied with NEPA.  *See id.*  This is precisely how the process should work.

Plaintiffs and *amici* professors emphasize instances in which FDA has not issued timely substantive responses to petitions, but FDA has also considered numerous citizen petitions carefully and issued thorough decisions within

---

[15]  *Available at* https://www.regulations.gov/document?D=FDA-2007-P-0234-0014.

[16]  *Available at* https://www.regulations.gov/document?D=FDA-2015-P-1433-0081.

reasonable time periods.  As FDA points out, Plaintiffs last year received a 35-page response to a citizen petition four years after it was filed.  *See* FDA Br. at 14-15.  If Plaintiffs have genuine concerns about ractopamine, they can file a citizen petition with FDA and then seek judicial intervention if FDA fails to adhere to the appropriate process or issues a ruling that is arbitrary and capricious.

**B.     Congress Is the Proper Venue for Raising Concerns that the FDA Citizen Petition Process Is In Need of Repair**

If Plaintiffs believe that the citizen petition process is in need of reform, including shortening timeframes for substantive responses, their remedy is with Congress, not this Court.  Congress can hold oversight hearings, pass legislation, and set strict deadlines for FDA responses.  For many citizen petitions, including those alleged here, Congress has determined that FDA should be given the time and flexibility for how and when to respond.  In select areas, Congress has decided to require FDA to decide a petition within specified periods.  Such legislation has proven to be controversial because deadlines to act in some FDA areas of responsibility could adversely impact FDA work in other areas.

In 2007, for example, Congress enacted the Food and Drug Administration Amendments Act (FDAAA) of 2007 to require FDA to take final agency action— not an interim response—within 180 days of certain citizen petition filings related to the approval of generic drugs.  *See* Pub. L. No. 110-85, § 914, 1212 Stat. 823, 953-54 (2007) (codified at 21 U.S.C. § 355(q)); 77 Fed. Reg. 25, 25-26 (Jan. 3,

2012) (proposed rule implementing FDAAA). In 2012, Congress tightened this deadline to 150 days and extended its application to certain petitions related to biosimilar applications. *See* Food and Drug Administration Safety and Innovation Act, Pub. L. No. 112-144, § 1135, 126 Stat. 993, 1123 (2012) (codified at 21 U.S.C. § 355(q)(1)(F)). The statute further provides that a petitioner can seek judicial review upon denial of the petition or the expiration of the 150-day period, but that courts must dismiss any action filed before that date for failure to exhaust administrative remedies. *See* 21 U.S.C. § 355(q)(2)(A),(B). There are several other areas where Congress has required FDA to rule on citizen petitions on specific deadlines, including with regard to animal health products.[17]

FDA has explained to Congress that meeting these statutory deadlines is often achieved by "redirecting efforts that otherwise would have been directed to other work," including other citizen petitions raising potentially important public health concerns. FDA, Seventh Annual Report on Delays in Approvals of Applications Related to Citizen Petitions and Petitions for Stay of Agency Action

---

[17] *See, e.g.*, 21 U.S.C. § 360b(n)(3) (added by Generic Animal Drug and Patent Term Restoration Act, Pub. L. No. 100-670, § 101, 102 Stat. 3971, 3974 (1988)) (requiring FDA to approve or disapprove within 90 days of submission a petition seeking permission to file an abbreviated (generic) new animal drug application that deviates from the listed drug, known as a "suitability petition"); 21 U.S.C. § 343(r)(4) (requiring FDA to respond to a petition requesting that the agency allow a food manufacturer to make a nutrient content claim in a brand name within 100 days of filing and providing that the FDA's failure to respond within this period is deemed a denial).

for Fiscal Year 2014, at 1, 10 (Aug. 23, 2015), *available at* http://www.fda. gov/

downloads/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco/

CDER/ReportsBudgets/UCM464282.pdf.

The Court should not grant this appeal and impose its own, arbitrary

deadline for FDA action.  Congress is the proper venue for Plaintiffs and *amici*

professors to raise their concerns that the FDA's citizen petition process would

take too long to address their issues or is futile.  Congress can balance these types

of allegations against the many other areas where FDA action is warranted and

determine if this is one of the select areas needing special treatment.

## III.   IF THIS ACTION IS ALLOWED, THE JUDICIARY, NOT THE AGENCIES, WOULD BECOME THE "FIRST DECIDER" FOR MANY REGULATORY MATTERS

Accepting Plaintiffs' invitation to rule in this case would encourage others to

similarly attempt to bypass agency processes and go directly to court to obtain their

desired action.  This Court has repeatedly recognized, though, that it is ill advised

for district courts to engage in decisions that raise technical, scientific questions

before the agency empowered by Congress has the opportunity to consider the

issue.[18]  This principle underlies not only administrative exhaustion, which is a

---

[18] *See, e.g., Dietary Supplemental Coalition, Inc. v. Sullivan*, 978 F.2d 560, 563 (9th Cir. 1992) ("[A] district court should decline to review anything less than a final administrative determination" where complex technical and scientific questions require agency expertise are raised.); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1377-78 (9th Cir. 1983) (declining to consider manufacturers

statutory requirement, but other doctrines, such as primary jurisdiction and legislative displacement of judicial remedies.[19]

The Supreme Court has recognized that, as a matter of institutional competence, courts, unlike agencies, "lack the scientific, economic, and technological resources an agency can utilize" to make multifactorial and technical public policy decisions. *Conn. v. Am. Elec. Power Co.*, 564 U.S. 410, 428 (2011). In part, this is because courts are "confined by a record comprising the evidence the parties present" and cannot consider impacts on parties not before the court. *Id*. Unlike with FDA, a court cannot commission scientific studies, convene groups of experts for advice, invite input from the public, or weigh the potential environmental benefits of a request action against other public needs. *See id*. It is for these reasons that the expert administrative agency entrusted by Congress for deciding complex balancing of science and policy is the "first decider." *Id*. at 427.

Requiring those who seek agency action to use existing administration remedies before going to court also conserves judicial resources. FDA has seen a

---

declaratory judgment that their products did not qualify as drugs or biological products until after FDA issued a final agency action to a citizen petition).

[19] *See, e.g., Kane v. Chobani*, LLC, No. 14-15670, 2016 WL 1161782, at *1 (9th Cir. Mar. 24, 2016) (unreported) (staying litigation alleging use of terms "natural" and "evaporated cane juice" on food labeling are deceptive under state law during FDA consideration of these issues); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761-62 (9th Cir. 2015) (finding identification of chemical compounds that may be advertised as natural is a complicated issue Congress has committed to FDA and that court should stay case to benefit from expert advice of agency).

surge in citizen petition filings since 2013.  *See* Hyman, Phelps & McNamara PC,

FDA Citizen Petition Tracker, FDA Law Blog (last updated Aug. 12, 2016), *at*

http://www.fdalawblog.net/fda_law_blog_hyman_phelps/files/CPTracker.xls

(compiling 23 to 38 citizen petitions filed each year from 2009 to 2012, but 135 to

174 petitions filed each year from 2013 to 2015, and 93 petitions filed in 2016

through August 12).  Granting the instant appeal could invite these and future

petitioners to bypass the citizen petition process, particularly when their arguments

are unlikely to withstand FDA's scientific scrutiny.

Finally, many organizations, as Plaintiffs do, will view their claims as

raising vital, time-sensitive issues, necessitating immediate court intervention.

Indeed, many citizen petitions raise public health concerns that, if validated, could

lead to significant agency action.  Examples from the past few months include

requests that FDA "immediately" add warnings and distribute information to

healthcare providers regarding "serious adverse reactions" of a specific class of

medication;[20] undertake "expedited removal" from the market of certain fluoride

---

[20] Citizen Petition, Public Citizen Health Research Group, Docket No. FDA-2016-P-1874-0001 (June 29, 2016), *available at* https://www.regulations.gov/document?D=FDA-2016-P-1874-0001.

supplements;[21] and "promptly" amend labels on all opioid analgesic and benzodiazepine class medications to warn of the risk of fatal overdose if misused.[22]

This Court should not accept Plaintiffs' invitation here to circumvent the FDA and interfere on its own accord with the well-considered approval of a drug. Plaintiffs, as with all other objectors, must use the congressionally-mandated, FDA-provided process for raising their allegations.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's Order.

Respectfully submitted,

/s/ Phil Goldberg
Phil Goldberg
Cary Silverman
SHOOK, HARDY & BACON L.L.P.
1155 F Street NW, Suite 200
Washington, D.C. 20004
Tel: (202) 783-8400
pgoldberg@shb.com
csilverman@shb.com

*Attorneys for Amicus Curiae*
*Animal Health Institute*

Dated: August 19, 2016

---

[21] Citizen Petition, Fluoride Action Network, Docket No. FDA-2016-P-1288-0001 (May 16, 2016), *available at* https://www.regulations.gov/document?D=FDA-2016-P-1288-0001.

[22] Citizen Petition, Leana Wen et al., Docket No. FDA-2016-P-0689-0001 (Feb. 22, 2016), *available at* https://www.regulations.gov/document?D=FDA-2016-P-0689-0001.

## CERTIFICATE OF COMPLIANCE

1.      I hereby certify the Brief of *Amicus Curiae* Animal Health Institute complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,827 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using MS Word in 14-point Times New Roman.

/s/ Phil Goldberg
Phil Goldberg
*Attorney for Amicus Curiae*
*Animal Health Institute*

Dated: August 19, 2016

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief of *Amicus Curiae* Animal Health Institute with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Court's CM/ECF system on August 19, 2016. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CF/ECF system.

/s/ Phil Goldberg
_____

Phil Goldberg
*Attorney for Amicus Curiae*
*Animal Health Institute*

Dated: August 19, 2016