No. 15-17510

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CENTER FOR FOOD SAFETY, *et al.*,

*Plaintiffs-Appellants*,

v.

MARGARET HAMBURG, *et al.*,

*Defendants-Appellees*,

and

ELANCO ANIMAL HEALTH,

*Intervenor-Defendant-Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
Consolidated Case Nos. 14:14-cv-04932-YGR, 4:14-cv-04933-YGR

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

CENTER FOR FOOD SAFETY
Paige Tomaselli
Cristina Stella
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
T: (415) 826-2770

THE HUMANE SOCIETY OF
THE UNITED STATES
Peter Brandt
Laura Fox
1255 23rd Street NW
Washington, DC 20037
T: (240) 388-5023

*Attorneys for Plaintiffs-Appellants*

[Complete list of counsel on signature page]

October 26, 2016

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................3

I.  Appellants Were Not Required to File a Citizen Petition Before
    Challenging FDA's Animal Drug Approvals..................................3

    A.  Appellants' Challenge to the Animal Drug Approvals Is Proper. ........4

    B.  FDA's Citizen Petition Regulation Does Not Render the
        Underlying Action Inoperative.............................................8

    C.  Withdrawal Will Not Provide Appellants the Relief They Seek. .......17

II. In the Alternative, the District Court Erred in Holding that It Did Not
    Have Discretion to Waive Exhaustion. .........................................21

    A.  FDA's Citizen Petition Provision Is Nonjurisdictional and Can Be
        Waived...................................................................21

    B.  The Court Abused Its Discretion in Declining to Waive
        Exhaustion. ............................................................26

        1.  FDA's Systematic Delays Are Relevant to Undue Prejudice...27

        2.  A Citizen Petition Would Not Redress the Injuries Appellants
            Alleged, nor Provide the Relief Appellants Sought, in Their
            Complaints ........................................................29

        3.  FDA's Policy on Categorical Exclusions Is Evidence that It
            Has Predetermined the Issue....................................30

        4.  Judicial Review, Not a Citizen Petition, Would Serve the
            Purposes of Exhaustion Here....................................31

CONCLUSION ....................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)............................................................................5

*Alaska Dep't of Envtl. Conservation v. EPA*,
   540 U.S. 461 (2004)............................................................................9

*AMFAC Resorts, LLC v. U.S. Dep't of Interior*,
   142 F. Supp. 2d 54 (D.D.C. 2001)....................................................16

*Anderson v. Evans*,
   371 F.3d 475 (9th Cir. 2002) .......................................................21, 29

*Animal Legal Def. Fund v. FDA*,
   No. 13-04622 (N.D. Cal. Oct. 7, 2013) ............................................29

*In re Arden*,
   176 F.3d 1226 (9th Cir. 1999) .....................................................26, 30

*Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*,
   358 F. App'x 179 (D.C. Cir. 2010)....................................................14

*Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*,
   539 F. Supp. 2d 4 (D.D.C. 2008)......................................................14

*Ass'n of Flight Attendants-CWA v. Chao*,
   493 F.3d 155 (D.C. Cir. 2007)..........................................................13

*Barnes v. U.S. Dep't of Transp.*,
   655 F.3d 1124 (9th Cir. 2011) ............................................................6

*Bastek v. Fed. Crop Ins. Corp.*,
   145 F.3d 90 (2d Cir. 1998) ...............................................................23

*Bennett v. Spear*,
   520 U.S. 154 (1997)............................................................................4

FEDERAL CASES (CONT'D)

*Benoit v. U.S. Dep't of Agric.*,
  608 F.3d 17 (D.C. Cir. 2010) .............................................................. 25

*Christensen v. Harris Cty.*,
  529 U.S. 576 (2000) ............................................................................. 8

*Clem v. Lomeli*,
  566 F.3d 1177 (9th Cir. 2009) ............................................ 4, 5, 18, 26

*Cody Labs., Inc. v. Sebelius*,
  446 F. App'x 964 (10th Cir. 2011) ............................................... 13, 23

*Conservation Force v. Salazar*,
  919 F. Supp. 2d 85 (D.D.C. 2013) ..................................................... 22

*Darby v. Cisneros*,
  509 U.S. 137 (1993) ....................................................................... 10, 15

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ................................................... 7, 17, 27

*Dietary Supplement Coal., Inc. v. Sullivan*,
  796 F. Supp. 441 (D. Or. 1991) ......................................................... 13

*Dietary Supplement Coal., Inc. v. Sullivan*,
  978 F.2d 560 (9th Cir. 1992) .............................................................. 27

*Dixie Fuel Co. v. Comm'r of Soc. Sec'y*,
  171 F.3d 1052 (6th Cir. 1999) ............................................................ 11

*DSE, Inc. v. United States*,
  169 F.3d 21 (D.C. Cir. 1999) ........................................................ 12, 13

*Farm-to-Consumer Legal Def. Fund v. Sebelius*,
  No. 10-4018, 2010 WL 3304204 (N.D. Iowa Aug. 18, 2010) ........... 25

*Fox Television Stations, Inc. v. FCC*,
  280 F.3d 1027 (D.C. Cir. 2002) ......................................................... 24

**FEDERAL CASES (CONT'D)**

*Glisson v. U.S. Forest Service*,
  55 F.3d 1325 (7th Cir. 1995) ............................................................22

*Gutierrez de Martinez v. Lamagno*,
  515 U.S. 417 (1995) ............................................................................16

*Haynes v. United States*,
  891 F.2d 235 (9th Cir. 1989) ...............................................................8

*Herr v. U.S. Forest Serv.*,
  803 F.3d 809 (6th Cir. 2015) .............................................................25

*Holistic Candlers & Consumer Ass'n v. FDA*,
  770 F. Supp. 2d 156 (D.D.C. 2011) ...................................................13

*Humane Soc'y of the U.S. v. Vilsack*,
  797 F.3d 4 (D.C. Cir. 2015) ...............................................................25

*Idaho Watersheds Project v. Hahn*,
  307 F.3d 815 (9th Cir. 2002) ...........................................14, 15, 16, 25

*J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*,
  721 F.3d 588 (8th Cir. 2013) .............................................................30

*Jensen v. Rollinger*,
  No. 13-1095, 2014 WL 3943705 (W.D. Tex. Aug. 12, 2014) ...........16

*Lands Council v. Powell*,
  395 F.3d 1019 (9th Cir. 2005) .............................................................7

*Lorillard, Inc. v. FDA*,
  No. 11-440, 2012 WL 3542228 (D.D.C. Aug. 1, 2012)...............24, 32

*McBride Cotton & Cattle Corp. v. Veneman*,
  290 F.3d 973 (9th Cir. 2002) .............................................................23

*McNary v. Haitian Refugee Ctr.*,
  498 U.S. 479 (1991)............................................................................17

FEDERAL CASES (CONT'D)

*Mont. Wilderness Ass'n v. Fry*,
310 F. Supp. 2d 1127 (D. Mont. 2004)............................................................25

*Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*,
554 U.S. 527 (2008)..........................................................................................11

*Munsell v. Dep't of Agric.*,
509 F.3d 572 (D.C. Cir. 2007)..........................................................................23

*Reno v. Catholic Soc. Servs., Inc.*,
509 U.S. 43 (1993)......................................................................................16, 17

*Ross v. United States*,
460 F. Supp. 2d 139 (D.D.C. 2006)..................................................................23

*Safari Club Int'l v. Jewell*,
76 F. Supp. 3d 198, 208 (D.D.C. 2014)............................................................25

*Safari Club Int'l v. Jewell*,
960 F. Supp. 2d 17 (D.D.C. 2013)....................................................................31

*Shawnee Trail Conservancy v. USDA*,
222 F.3d 383 (7th Cir. 2000) .....................................................................14, 22

*Simmons v. Himmelreich*,
136 S. Ct. 1843 (2016)........................................................................................9

*Teva Pharm. USA, Inc. v. Sebelius*,
638 F. Supp. 2d 42 (D.D.C. 2009)....................................................................25

*United States v. Ron Pair Enters., Inc.*,
489 U.S. 235 (1989)............................................................................................3

*Volvo GM Heavy Truck Corp. v. U.S. Department of Labor*,
118 F.3d 205 (4th Cir. 1997) ............................................................................22

*W. Radio Servs. Co. v. Espy*,
79 F.3d 896 (9th Cir. 1996) ..............................................................................24

**FEDERAL CASES (CONT'D)**

*W. Watersheds Project v. U.S. Forest Serv.*,
   No. 07-151, 2007 WL 3407679 (D. Idaho Nov. 13, 2007) ...............................25

*Woodford v. Ngo*,
   548 U.S. 81 (2006)......................................................................................25, 32

**FEDERAL STATUTES**

5 U.S.C. § 702...................................................................................................5, 6

5 U.S.C. § 704...............................................................................................*passim*

21 U.S.C. § 360b(e)(1)............................................................................19, 20, 29

**CODE OF FEDERAL REGULATIONS**

21 C.F.R. § 10.3 .................................................................................................5, 6

21 C.F.R. § 10.45 ...............................................................................................8, 25

21 C.F.R. § 10.45(a)...............................................................................................5

21 C.F.R. § 25.52 .................................................................................................20

36 C.F.R. § 218.12 ...............................................................................................22

42 C.F.R. § 1508.14 .........................................................................................18, 19

**FEDERAL RULES OF PROCEDURE**

Fed. R. App. P. 43 ..................................................................................................1

Fed. R. Civ. P. 12(b)(6).....................................................................................17, 26

**OTHER AUTHORITIES**

Food and Drug Administration, Department of Health, Education, and
   Welfare, Administrative Practices and Procedures, 40 Fed. Reg.
   22,950 (May 27, 1975) .............................................................................8, 17, 22

OTHER AUTHORITIES (CONT'D)

Food and Drug Administration, Department of Health, Education, and Welfare, Reorganization and Welfare, 42 Fed. Reg. 15,553 (Mar. 22, 1977) ......................................................................................................8

NEPA; Revision of Policies and Procedures, 62 Fed. Reg. 40,570 (July 29, 1997) ...................................................................................................20

New Animal Drugs; Change of Sponsor, 81 Fed. Reg. 48,700 (Jul. 26, 2016) ..........................................................................................................1

S. Rep. No. 752 (1945) ................................................................................9

William Funk, *Exhaustion of Administrative Remedies—New Dimensions Since Darby*, 18 Pace Envtl. L. Rev. 1, 17 (2000)...............................................10

**INTRODUCTION**

This case challenges Appellee U.S. Food and Drug Administration's (FDA's or the Agency's) unlawful approval of eighteen new animal drugs[1] containing ractopamine—a controversial animal drug with significant environmental impacts—in violation of the National Environmental Policy Act (NEPA) and Administrative Procedure Act (APA).[2] Appellants allege that, when released into the environment, ractopamine and the drugs with which it is combined can pollute the air, contaminate water, and cause devastating impacts on animals including endangered species; and that FDA was required to disclose and analyze these impacts under NEPA prior to approving these drugs.

Before this case can reach the merits, this Court must decide whether Appellants can be denied judicial review of unlawful final agency actions—the animal drug approvals that violated NEPA and the APA—because Appellants did not file a post-decision citizen petition outlining their bases for challenging the

---

[1] Intervenor-Appellee Elanco Animal Health (Elanco) has transferred all "ownership of, and all rights and interest in" the animal drugs at issue in this case to "Elanco U.S., Inc." and is no longer a "sponsor of any approved [animal drug] application." New Animal Drugs; Change of Sponsor, 81 Fed. Reg. 48,700, 48,700-02 (Jul. 26, 2016). Thus, Elanco does not have any continuing interest in the animal drug approvals at issue in this lawsuit, and is not a proper party to this case. *See* Fed. R. App. P. 43.

[2] Additional pertinent statutes and regulations are set forth in the addendum to this brief.

already-final agency actions. The answer is no, and the issue is controlled by the plain language of the APA. FDA's exhaustion rules do not adhere to Congress's clear instructions in APA § 704, which only allow an agency to require administrative exhaustion by rule if the underlying agency action—here, FDA's final animal drug approvals—is inoperative pending appeal. FDA's citizen petition regulation cannot stand as an obstacle to judicial review of final agency actions because it does not render the animal drug approvals inoperative, subjecting Appellants to both the Agency decision and repetitious administrative process without recourse.

Because Appellees cannot earnestly argue that animal drug approvals are not final agency actions—in fact, FDA admits they are final—they instead premise their entire argument on a single red herring: that Appellants need final agency action *on a separate citizen petition* before seeking review of the already-final drug approvals. If Appellees' argument is correct, then any FDA final agency action would be insulated from judicial review. According to Appellees, before a court can review FDA's failure to comply with NEPA, FDA would have to conclude not one, but two separate administrative processes: the animal drug approval itself, then the entirely separate citizen petition challenging it. Thus, FDA could violate NEPA—as the Agency's own policy document demonstrates it consistently does with regard to animal drug approvals—without fear of consequences, and the

animal drugs could be released into the environment, while members of the public wait indefinitely for the Agency to respond to a citizen petition requesting that FDA comply with a law by which it was already bound.

The purpose of NEPA is not served—and the plain letter of the APA is violated—by requiring interested persons to initiate a new action while the underlying final agency actions, the drug approvals, remain in place. If the Court accepts Appellees' approach, it will enable FDA to circumvent judicial review of final Agency actions, while those actions cause significant irreparable harm to the environment. Accordingly, the district court erred when it concluded that, in order to challenge final agency actions, Appellants must commence a new administrative action—the citizen petition process—and establish a second administrative record based on FDA's response to that petition. Alternatively, even if this Court were to find that Appellants were required to exhaust the citizen petition provision, the district court had discretion to, and should have, waived it in this case, because, *inter alia*, it would be futile for Appellants to file a citizen petition here.

**ARGUMENT**

**I.      Appellants Were Not Required to File a Citizen Petition Before Challenging FDA's Animal Drug Approvals.**

"The task of resolving the dispute over the meaning of [APA § 704] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (citation omitted).

3

Pursuant to APA § 704, "[e]xcept as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section … unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative." 5 U.S.C. § 704. Importantly, where, as here, exhaustion is required only by rule,[3] the rule must meet two conditions: (1) it must require appeal to superior agency authority, and (2) the appeal must render the underlying agency decision inoperative. *Id*. FDA concedes, as it must, that the challenged drug approvals are final decisions for which it has assembled administrative records. Answering Br. Federal Appellees (FDA's Br.) 34, 53. The Agency also concedes that a citizen petition does not render the underlying drug approvals inoperative, as is required by the plain language of the APA. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (an argument not addressed in an answering brief is waived) (citing *United States v. Gamboa-Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007)). FDA's citizen petition regulation does not meet the conditions of APA § 704; thus, a citizen petition is not required here.

### A. Appellants' Challenge to the Animal Drug Approvals Is Proper.

There is no question that animal drug approvals are final agency actions. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (animal drug approvals are

---

[3] The parties and the district court agree that the Federal Food, Drug, and Cosmetic Act does not require administrative exhaustion for animal drug approvals. *See* Pls.-Appellants' Opening Br. 16.

regulations that represent FDA's final decision on a petition for approval of an animal drug, and determine the rights of the applicant to distribute the animal drug); Pls.-Appellants' Opening Br. (Appellants' Br.) 29; FDA's Br. 34 ("the drug approvals are final"); *see generally Abbott Labs. v. Gardner*, 387 U.S. 136, 150-51 (1967) (APA provides for review of regulations as final agency action), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). While FDA admits that the drug approvals are final, FDA's Br. 34, Elanco avoids the topic altogether.[4] Yet both insist that Appellants must initiate a new administrative proceeding in order to obtain judicial review of the existing final agency actions, and that only when FDA makes a decision on that new action will there be a final agency action Appellants can challenge. *See, e.g.*, Br. Elanco Animal Health (Elanco's Br.) 29; FDA's Br. 30. This is inconsistent with the plain text of the APA. Nothing in the Agency's regulations suggests that Appellants are required to file a *second* petition and seek a *second* final agency action in order to challenge what the Agency itself already defines as a "final administrative action." 21 C.F.R. § 10.45(a).[5]

---

[4] By failing to dispute that animal drug approvals are final agency actions, Elanco has waived the issue. *See Clem*, 566 F.3d at 1182 (an argument not addressed in an answering brief is waived).

[5] Appellants have a right of judicial review of FDA's final decisions. Any interested person can challenge an animal drug approval. 21 C.F.R. § 10.3; 5 U.S.C. § 702. FDA defines "interested person" as "a person who submits a petition or comment or objection or *otherwise asks to participate in an informal or formal*

Still, Appellees maintain that Appellants must initiate a new, second administrative action so that FDA can "exercise its expertise" over the subject matter. FDA's Br. 37. This argument rests on a thin reed: that Appellants are presenting "new information" to the Agency, rather than challenging FDA's final agency actions in approving the drugs. ER195, 218-19. Indeed, FDA already exercised its expertise, and in doing so, failed to consider certain information that was so obvious, Appellants should not have had to—but already did in many instances—point it out.[6] *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1133 (9th Cir. 2011) (noting that a NEPA document's "flaws 'might be so obvious that there is no need for a commentator to point them out specifically in order to preserve its

---

*administrative proceeding or court action.*" 21 C.F.R. § 10.3 (emphasis added). The APA also provides a right of judicial review to a "person." 5 U.S.C. § 702. Congress defined a "person" who has a right of review as "an individual, partnership, corporation, association, or public or private organization other than an agency." *Id.* § 551(2). This right of judicial review is broad; it is not limited to a party to a proceeding.

[6] FDA did not consider data in its own files when approving the drugs at issue in this case, FDA's Br. 39-40 (listing data, alleged in Appellants' Complaints, not considered by FDA, some of which Appellants received from FDA itself through the Freedom of Information Act), including information submitted to the Agency in 2012 by Appellants Center for Food Safety (CFS) and Animal Legal Defense Fund as part of a citizen petition. *See* Citizen Pet. & Attachs. from CFS, et al., to FDA, Docket No. FDA-2012-P-1252 (Dec. 20, 2012), available at https://www.regulations.gov/document?D=FDA-2012-P-1252-0001; *see also* Appellants' Br. 48-49 (citing ER188-90) (complaint allegations stating analysis relied upon in FDA's NEPA documents was between four and fifteen years old at the time of approvals); ER213, 215 (same).

ability to challenge a proposed action.'") (citation omitted).

More importantly, it is premature to conclude that any evidence Appellants reference in their Complaints was not in front of FDA at the time it made its decisions. Whether the administrative record is complete is a question for the district court under well-settled Ninth Circuit case law. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (citing *Camp v. Pitts*, 411 U.S.138, 142-43 (1973)). The litigation in the district court did not reach the issue of the scope of the administrative record, and thus Appellees' arguments about the contents of the record are irrelevant, because the district court was ruling on a motion to dismiss. As such, only the allegations of the Complaints and their adequacy are in dispute. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) (The Court must accept "all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.") (citation omitted). Appellees' claim that Appellants are relying on "new evidence," *see, e.g.*, FDA's Br. 53; Elanco's Br. 40, is thus inappropriate at this stage.

Even so, FDA has formally interpreted the citizen petition process as optional once it has approved an animal drug. According to FDA, "an existing [FDA] regulation is subject to judicial review under the [APA] *at any time by any interested person*. If the regulation was promulgated some years ago, however, any person who concludes to challenge its legality *may wish* first to petition the

Commissioner pursuant to [the citizen petition provision] to amend or revoke the regulation." Food and Drug Administration, Department of Health, Education, and Welfare, Administrative Practices and Procedures, 40 Fed. Reg. 22,950, 22,957 (May 27, 1975) (emphases added).[7] "May wish" is a far cry from "shall." *See Haynes v. United States,* 891 F.2d 235, 239 (9th Cir. 1989) ("The word 'may' usually implies some degree of discretion."). According to FDA's official position, animal drug approvals are subject to judicial review under the APA at any time. 40 Fed. Reg. at 22,957. Thus, FDA's claimed interpretation of its citizen petition regulation now asserted in litigation, but contrary to its official interpretation after notice and comment rulemaking, is not entitled to deference. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000).

**B. FDA's Citizen Petition Regulation Does Not Render the Underlying Action Inoperative.**

The final sentence of APA § 704 clearly articulates the only means by which an agency can require administrative exhaustion by rule: when it "provides that the action meanwhile is inoperative, for an appeal to superior agency authority."

---

[7] The regulation FDA was describing in this excerpt (then codified as 21 C.F.R. § 2.11) is materially the same as current FDA regulation 21 C.F.R. § 10.45. FDA has only made minor wording changes, which it described as "nonsubstantive." *See* Food and Drug Administration, Department of Health, Education, and Welfare, Reorganization and Welfare, 42 Fed. Reg. 15,553, 15,554 (Mar. 22, 1977).

5 U.S.C. § 704.[8] The final sentence of § 704 does not address "special circumstances." *See* Elanco's Br. 30. It addresses the *only* circumstances in which an agency can require administrative exhaustion. *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1848 (2016) ("Absent persuasive indications to the contrary, we presume Congress says what it means and means what it says.").

The legislative history of § 704 confirms that an agency can only require exhaustion by rule if the underlying decision is inoperative pending review. When Congress was considering enactment of the APA, the Department of Justice advised it that:

> The last sentence [of § 704] makes it clear that the doctrine of exhaustion of administrative remedies with respect to finality of agency action is intended to be applicable only (1) where expressly required by statute (as, for example, is provided in 49 U.S.C. § 17(9)), or (2) where the agency's rules require that decisions by subordinate officers must be appealed to superior agency authority before the decision may be regarded as final for purposes of judicial review.

S. Rep. No. 752, at 230 (1945). The government now seeks to disavow its former construction of § 704, *see* Appellants' Br. 12, 23, 27 (discussing Department of

---

[8] Elanco attempts to reorganize APA § 704 to make it "clearer." Elanco's Br. 29, n.11 ("The final clause of [the last sentence in § 704] . . . becomes clearer if it is reorganized ...."). This ignores the cardinal principle of statutory interpretation: "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 489 n.13 (2004) (citation omitted). Elanco cannot reorganize § 704 to suit its interpretation.

Justice's construction of § 704), and replace it with its litigation position, which it developed *several months after* Elanco filed its Motion to Dismiss.

Appellees also minimize the Supreme Court's discussion of this issue in *Darby v. Cisneros,* 509 U.S. 137 (1993). *Darby*'s holding could not be clearer: "the language of [§ 704] of the APA is explicit that an appeal to 'superior agency authority' is a prerequisite to judicial review only when 'expressly required by statute' *or when the agency requires an appeal 'by rule and provides that the [administrative] action is . . . inoperative'* pending that review." *Id.* at 137. Thus according to *Darby*, if an agency requires exhaustion by rule, the rule must meet two conditions: (1) it must require appeal to superior agency authority, and (2) the appeal must render the underlying agency decision inoperative. *Id.* Appellants' reading of § 704 and *Darby* is the only reading that is faithful to the plain language of the APA, its legislative history, and to *Darby*. Also, it is consistent with the leading administrative law scholars' view of both. *See* Br. Amici Curiae Environmental, Administrative, and Food Law Professors (Profs.' Br.) 2 n.2; William Funk, *Exhaustion of Administrative Remedies—New Dimensions Since Darby*, 18 Pace Envtl. L. Rev. 1, 17 (2000).

Appellees quote *Darby* as stating that either a statute or agency rule can equally require exhaustion. Elanco's Br. 34; FDA's Br. 25-26 ("an agency action is final… 'when an aggrieved party has exhausted all administrative remedies

expressly prescribed by statute or agency rule'") (citing *Darby*, 509 U.S. at 154). [9]

In their view, Congress gave agencies *carte blanche* to establish any rule requiring exhaustive agency review of their final actions. But this is a misrepresentation of *Darby* and § 704. Appellees ignore pages of analysis and cherry-pick two sentences from *Darby* to support their theory that any agency rule can require exhaustion, notwithstanding whether that rule actually halts the underlying action. These sentences from *Darby* cannot be read in isolation. *See Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*, 554 U.S. 527, 563 (2008) ("reliance on [a] few stray sentences" ought to be admonished).

In *Dixie Fuel Company v. Commissioner of Social Security*, 171 F.3d 1052 (6th Cir. 1999), *overruled on other grounds by Barnhart v. Peabody Coal Co*., 537 U.S. 149 (2003), the Sixth Circuit interpreted *Darby*. There, a mine operator challenged the Commissioner's assignment of Coal Act beneficiaries to the company. 171 F.3d at 1059. The Commissioner argued that the company failed to exhaust administrative remedies. *Id*. The court stated that under *Darby*, it lacked discretion to require exhaustion unless "expressly required by statute or when an agency rule requires *appeal before review* and *the administrative action is made inoperative pending that review*." *Id.* (emphasis added) (citation omitted). In the

---

[9] FDA's brief even goes so far as to misstate that this quote from *Darby* is actually a direct quote from APA § 704. *See* FDA's Br. 26. It is not.

instant case, there is no mandate to exhaust administrative remedies and no provision making agency action inoperative pending review; hence, exhaustion cannot be required.

FDA agrees with Appellants that "a citizen petition is not an appeal to superior agency authority," *see* Appellants' Br. 25-29, but misconstrues the importance of this fact, *see* FDA's Br. 27-28. Appellants have not "failed to initiate agency review in the first instance," *id*. at 30, such that there would be nothing to appeal without FDA's decision on a citizen petition. Elanco has already filed initial petitions—animal drug applications—with the Agency, on which FDA has acted. FDA reviewed the animal drug applications "in the first instance" before it took final agency action to approve them. It is precisely because a new citizen petition is not an appeal of this final agency action that Appellants do not need to file one.

Appellees' position that a citizen petition is not an appeal to superior agency authority, and therefore the inoperative provision of § 704 does not apply, FDA's Br. 28, cannot be reconciled with the case law. For example, FDA relies on *DSE, Inc. v. United States*, 169 F.3d 21, 26-27 (D.C. Cir. 1999), in support of this argument. But *DSE* actually supports Appellants' position. In *DSE*, the defendant agency determined the plaintiff business was too large to qualify for a government small business contract on which it bid. *Id*. The plaintiff there needed to, and did, first seek a "business size determination" before bidding on the contract—just as

here, Elanco had to, and did, petition for FDA approval on its new animal drug application. In *DSE*, a business size determination "becomes effective immediately and remains in full force and effect *unless and until* reversed by [the agency]." *Id.* at 26 (quoting 13 C.F.R. § 121.1009(g)(1)) (emphasis added). Thus in *DSE*, as here, once the agency made its final size determination, the duty to exhaust extinguished in part because, "as *Darby* makes relevant, the filing of an appeal petition with [the agency] does not render a . . . determination inoperative." *Id*. at 27. The court held that, since the determination would not be rendered inoperative by an appeal to a "superior agency authority," the plaintiff did not need to appeal the size determination first before seeking judicial review of the government's decision to deny the bid. *Id*. The same applies here.

The other cases Appellees cite to show that courts require plaintiffs to file citizen petitions before challenging FDA decisions are distinguishable for one of two reasons: either there was no final action for the plaintiffs to challenge, *see Holistic Candlers & Consumer Ass'n v. FDA*, 770 F. Supp. 2d 156, 163 (D.D.C. 2011), *aff'd*, 664 F.3d 940 (holding warning letter not final agency action); *Cody Labs., Inc. v. Sebelius*, 446 F. App'x 964, 969-70 (10th Cir. 2011) (same); *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 160 (D.C. Cir. 2007) (plaintiffs did not challenge a regulation promulgated by the agency and thus the court did not hold that exhaustion was required to challenge a final agency action); *Dietary*

*Supplement Coal., Inc. v. Sullivan*, 796 F. Supp. 441, 446 (D. Or. 1991) ("the challenged action is not final"), or the courts simply fail to address the APA's plain language, *Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*, 358 F. App'x 179 (D.C. Cir. 2010) (failing to address the plain language of the APA requiring that exhaustion created by regulation must render the underlying decision inoperative pending appeal); *Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*, 539 F. Supp. 2d 4, 21-22 (D.D.C. 2008) (same); *Shawnee Trail Conservancy v. USDA*, 222 F.3d 383 (7th Cir. 2000) (same).

Finally, Appellees rely heavily on *Idaho Watersheds Project v. Hahn*, 307 F.3d 815 (9th Cir. 2002), but their interpretation of that case is also dependent on their constrained view of the finality of animal drug approvals and a complete misrepresentation of the facts of that case. FDA incorrectly portrays *Idaho Watersheds* as a simple case where environmental groups participated in the administrative process, the Bureau of Land Management's (BLM's) regulations did not render the permits at issue inoperative, and the environmental groups could proceed to federal court. FDA's Br. 33. FDA argues it was irrelevant that one of the groups failed to file any administrative appeals, because both groups had previously "'challenge[d] all the permits' by submitting protests and comments to BLM before it finalized its actions." *Id.* (citing *Idaho Watersheds Project*, 307 F.3d at 829). But that was not the situation at all in *Idaho Watersheds*.

14

Just like Appellees may want the Court to believe here, the agency in *Idaho Watersheds* contended there was no final agency action to challenge—and this Court disagreed. In considering BLM's exhaustion defense, the Court asked:

> whether the BLM's administrative appeal regulations provide procedures that effectively render inoperative the challenged decision pending appeal. *If the regulations do not allow for the decision to be rendered inoperative pending administrative appeal, then exhaustion of administrative appeals is not required and the matter was properly before the district court*.

307 F.3d at 825 (emphasis added) (citation omitted). The Court looked to BLM's regulations to determine whether, under two possible scenarios, the agency's decision would be rendered inoperative pending appeal. *Id*. at 827. The Court found that it would not:

> Under this scenario, the Environmental Groups would not be required to exhaust their administrative remedies because where there was no lawfully authorized grazing in the previous year, the BLM's regulations, on their face, do not provide for rendering the agency's decision inoperative pending appeal. *Darby,* 509 U.S. at 152 ….

> This result does not provide that "the action is meanwhile inoperative" as required by the APA but rather is a backhanded way of granting an ongoing permit—while also evading the BLM's own 1995 regulations requiring enhanced permit review and evading NEPA. Because under the facts of this case the BLM's regulations render the decision "inoperative" in name only, while in fact implementing an unreviewed decision, we hold that exhaustion is not required.

*Id*. at 827-28. It is clear that, notwithstanding the specific BLM regulations at

issue,[10] the Court in *Idaho Watersheds* interpreted *Darby* to hold that, in order for exhaustion to be required, regulatory exhaustion provisions must provide that the underlying decision must be "rendered inoperative" pending appeal. *Id.*

Any lingering doubt about the proper interpretation of APA § 704 is dispelled by another familiar principal of statutory interpretation: the presumption favoring judicial review of administrative action. When a statute is "reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 434 (1995). Because the "presumption favoring interpretations of statutes [to] allow judicial review of administrative action" is "well-settled," *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 63-64 (1993) (quoting *McNary v.*

---

[10] FDA attempts to frame this and other cases as narrowly as possible, claiming there is something so unique about the BLM regulations that the analysis cannot travel. *See* FDA's Br. 34. No court has endorsed FDA's unsubstantiated attempt to limit those cases. The Court in *Idaho Watersheds* directly tied the principle of staying an initial decision upon reconsideration with APA § 704 and *Darby*. 307 F.3d at 827-28. Courts have analyzed that principle under many different regulatory schemes. *See, e.g.*, *Jensen v. Rollinger*, No. 13-1095, 2014 WL 3943705, at *3-7 (W.D. Tex. Aug. 12, 2014) (analyzing the inoperative provision under Coast Guard regulations); *see also AMFAC Resorts, LLC v. U.S. Dep't of Interior*, 142 F. Supp. 2d 54, 78 (D.D.C. 2001) (subsequent history omitted) (regarding an intra-agency appeal of a contract dispute, the Court found that, "because the central issue of a preferential right determination is rendered inoperative, the [National Park Service is] not in violation of section 10(c) of the APA").

*Haitian Refugee Ctr.,* 498 U.S. 479, 496 (1991)), the Court assumes that "Congress legislates with knowledge of" the presumption, *McNary*, 498 U.S. at 496. It therefore takes "clear and convincing evidence" to dislodge the presumption. *Catholic Soc. Servs., Inc.,* 509 U.S. at 64. There is no such evidence here with regard to the APA.

Appellees would have this Court believe that animal drug approvals, operative and final agency regulations, are not immediately reviewable in court. In Appellees' view, when FDA approves drugs, it can ignore its legal obligations, such as NEPA, without fear of any immediate consequences. In other words, every drug approval would be insulated from judicial review unless an interested party first files a petition with FDA expressing its concerns, while the approved drug is having unexamined impacts on the environment. *See* Appellants' Br. 23. This is inconsistent with the plain language of the APA, its legislative history, *Darby,* and the Agency's official interpretation of its exhaustion regulations, 40 Fed. Reg. at 22,957. FDA cannot override the right of judicial review of final and effective agency actions granted by Congress in the APA.

### C.     Withdrawal Will Not Provide Appellants the Relief They Seek.

The citizen petition process is unable to provide Appellants the relief they seek. Despite Appellees' flagrant and repeated mischaracterizations of Appellants' claims, which violate the dictates of review under Fed. R. Civ. P. 12(b)(6), *Davis,*

691 F.3d at 1159 (citation omitted), Appellants are asking FDA to complete a lawful environmental analysis as required by NEPA and for the drug approvals to be rendered inoperative pending NEPA compliance, as the APA requires. *See* ER194-196, 219, 221. Appellants base these requests on environmental harms resulting from FDA's approval of the drugs at issue, ER178-82, 208-09, both as a result of the impacts to humans and target animals, ER175-6, 184, 206-7, 210, and independently when released into the environment, *see, e.g.*, ER178-83, 185, 208-12. These harms fall squarely within NEPA's scope. *See* 42 C.F.R. § 1508.14. FDA concedes that it may not be authorized to withdraw a drug based on these concerns, FDA's Br. 46, and admits it would not grant a stay of the drug approvals pending consideration of a citizen petition. [11] Thus, a citizen petition is categorically unable to provide Appellants the relief they seek. *See* Appellants' Br. 21-23, 29-32.

Appellants have not simply failed to avail themselves of an existing opportunity to participate in the administrative process, or unnecessarily delayed filing suit. In reality, because drug approvals are kept confidential until they are

---

[11] FDA has "asserted in this litigation that Appellants do not meet the stay criteria." Appellants' Br. 22. Neither answering brief disputes this. Thus Appellees have conceded that if Appellants were to file a petition with FDA, the Agency would not grant a stay pending review of the petition, *see Clem*, 566 F.3d at 1182, acknowledging that the approvals at issue would remain operative pending citizen petition review.

final, Appellants had no opportunity to comment during the administrative process; only after the approvals were announced in the Federal Register did Appellants even become aware of them.[12] *See* Appellants' Br. 23-24. Appellants do not now wish to initiate drug withdrawal proceedings or otherwise challenge the drug approvals pursuant to the Federal Food, Drug, and Cosmetic Act (FFDCA) based on their safety for humans or target animals. *See* ER194-196, 219, 221 (not seeking relief under the FFDCA). Appellants are asking this Court to return the parties to the legal status quo, where FDA conducts a NEPA analysis based on the information the Agency considered when approving the animal drugs, *before* it allows Elanco and others to openly sell these environmentally harmful drugs. Only this Court—not a citizen petition—can do that.

Each of Appellants' claims and requests for relief fall squarely under FDA's authority pursuant to NEPA, not the FFDCA. *Compare* 42 C.F.R. § 1508.14 ("'Human environment' shall be interpreted comprehensively to include the natural and physical environment and the relationship of people with that environment.") *with* 21 U.S.C. § 360b(e)(1) (limiting bases for drug withdrawal to target animal and human health effects). FDA—which should have a better understanding than Elanco of the limits of its own authority—concedes that it may be limited in its

---

[12] The environmental information provided by a Federal Register notice announcing an animal drug approval consists of a conclusory summary, from which the adequacy of FDA's NEPA compliance is not readily apparent.

authority to withdraw an animal drug based on environmental concerns alone.[13] Despite this, FDA misleadingly notes that it "may" consider *"scientific* evidence" presented in an environmental review "to evaluate the *safety* of a new animal drug," FDA's Br. 47 (emphasis added). This refers back to drug safety in the context of the FFDCA, which says nothing about FDA's consideration of environmental effects. *See* 21 U.S.C. § 360b(e)(1).

Unclear references to FDA regulations about "comments," not citizen petitions, on Environmental Impact Statements—which FDA did not conduct here, rendering the regulation inapplicable by its plain terms, *see* 21 C.F.R. § 25.52— cannot replace the plain language of the FFDCA. Despite abundant opportunities, Appellees have not identified any authority within the FFDCA empowering FDA to take an *already-approved* animal drug off the market while it considers harms to air, water, wildlife, endangered species, or critical habitat.[14] Only NEPA provides

---

[13] Requiring Appellants to petition in the face of FDA's response on this point forces them into an indefinitely long but ultimately dead-end process, whereby FDA can wait years before even asserting that it lacks authority to take the requested action, while these drugs irreparably harm the environment.

[14] "In contrast, FDA may refuse to approve an *initial* drug application if the applicant 'fails to submit an adequate environmental assessment . . . or fails to provide sufficient information to establish that the requested action is subject to categorical exclusion.'" Profs.' Br. 14 (citing 21 U.S.C. § 514.111(a)(9); *see* NEPA; Revision of Policies and Procedures, 62 Fed. Reg. 40,570, 40,572 (July 29, 1997) (noting an "adequate" EA "contains sufficient information to enable the

this relief. *See Anderson v. Evans*, 371 F.3d 475, 494 (9th Cir. 2002) (vacating

agency action "[b]ecause the agencies have not complied with NEPA"). Hence, as

FDA acknowledged below, the Complaints do not seek withdrawal under the

FFDCA, but vacatur under NEPA. *See* ER033 (Appellants "seek to compel FDA to

comply with NEPA, rather than, as Elanco suggests, to withdraw or suspend the

animal drug approvals under the [FFDCA].").

## II.   In the Alternative, the District Court Erred in Holding that It Did Not Have Discretion to Waive Exhaustion.

### A.   FDA's Citizen Petition Provision Is Nonjurisdictional and Can Be Waived.

Appellants' claims were wrongly dismissed based on exhaustion.

Nonetheless, and in the alternative, this Court may waive an exhaustion

requirement that is nonjurisdictional, like the one at issue here. FDA

acknowledges, as it must, that courts have held the exhaustion requirement at issue

here is nonjurisdictional and can be waived. FDA's Br. 43-44; *see also* Appellants'

Br. 34, 38. Elanco cursorily dismissed this issue with only a footnote, *see* Elanco's

Br. 46 n.16, which simply says that Appellants' legal premise is wrong.

The parties agree an exhaustion requirement that comports with APA § 704

would have to be followed pursuant to *Darby*. But, in glossing over Appellants'

---

agency to determine whether the proposed action may significantly affect the
quality of the human environment").

reading of *Darby* and the requirements of § 704, Elanco relies on inapposite cases involving exhaustion requirements that comport with § 704, unlike the FDA regulations at issue here. *See* Elanco's Br. 45 n.15. Both *Shawnee Trail Conservancy v. U.S. Department of Agriculture*, 222 F.3d 383 (7th Cir. 2000), and *Glisson v. U.S. Forest Service*, 55 F.3d 1325 (7th Cir. 1995), deal with the U.S. Forest Service, whose regulations require persons who want to challenge a project approval to file a timely objection; however, those regulations, 36 C.F.R. § 218.12, also render the approval inoperative until the administrative process has concluded. In *Conservation Force v. Salazar*, 919 F. Supp. 2d 85 (D.D.C. 2013), the exhaustion regulations were only applicable when the agency upheld denial of a permit, meaning that no agency action was taking place, nor could be rendered inoperative, during administrative review. *Volvo GM Heavy Truck Corporation v. U.S. Department of Labor*, 118 F.3d 205 (4th Cir. 1997), is similarly distinguishable because the regulations at issue provided that an agency action is not final until an appeal has been taken, whereas here, animal drug approvals are undisputedly final agency actions and there is no appeal requirement applicable to them. 40 Fed. Reg. at 22,957 (animal drug approvals are "subject to judicial review under the [APA] at any time"). These cases are totally consistent with Appellants' interpretation of *Darby* and § 704.

Similarly, it was a statute, not an administrative rule, that required

exhaustion in both *Bastek v. Federal Crop Insurance Corporation*, 145 F.3d 90 (2d

Cir. 1998), and *Ross v. United States*, 460 F. Supp. 2d 139 (D.D.C. 2006). This

Circuit has rejected the very approach the Second Circuit took in *Bastek* in

*McBride Cotton & Cattle Corporation v. Veneman*, 290 F.3d 973, 980 (9th Cir.

2002):

> The court in *Bastek* based its analysis upon a
> determination that the exhaustion requirement of
> § 6912(e) was a statutory requirement, as opposed to one
> which had been "judicially-developed." We recognized
> in [previous] cases, however, that not all statutory
> exhaustion requirements are created equal. Only statutory
> exhaustion requirements containing "sweeping and
> direct" language deprive a federal court of jurisdiction.
> Section 6912(e) contains no such language.

290 F.3d at 980 (citations omitted). Thus, none of the cases cited by Appellees[15]

undermine Appellants' position that exhaustion can only be required by statute or

by an agency rule that renders the underlying action inoperative pending review;

FDA's citizen petition regulation is nonjurisdictional and can be waived.

Elanco's attempts to distinguish Appellants' cases, *see* Elanco's Br. 47-48,

are similarly unpersuasive. For example, the courts in *Munsell v. Department of*

*Agriculture*, 509 F.3d 572 (D.C. Cir. 2007), and *Cody Labs., Inc. v. Sebelius*, 446

---

[15] Despite the thirty-three post-*Darby* cases Appellants have presented in this
litigation, *see* Appellants' Br. 36-37, Elanco cites only to six cases for the lofty
proposition that "the majority of federal courts addressing the issue have concluded
that courts lack discretion to waive the exhaustion requirement imposed by the
APA," Elanco's Br. 45.

F. App'x 964 (10th Cir. 2011), both expressly recognized that post-*Darby*,

nonjurisdictional exhaustion requirements can be waived. These cases

unequivocally comport with Appellants' view: FDA's exhaustion provision is

nonjurisdictional, and thus can be waived even post-*Darby*.[16] Contrary to Elanco's

characterization, Elanco's Br. 47, the court in *Lorillard*, *Inc. v. FDA*, No. 11-440,

2012 WL 3542228 (D.D.C. Aug. 1, 2012), *vacated on other grounds sub nom.*,

*R.J. Reynolds Tobacco Co. v. FDA*, 810 F.3d 827 (D.C. Cir. 2016), held exactly

that. The court there agreed with the plaintiffs, who argued—exactly as Appellants

do here—that FDA's exhaustion requirement is not jurisdictional pursuant to

*Darby* and that forcing Appellants to file a citizen petition would put them in

"indefinite . . . limbo." Pls.' Opp'n to Def.'s Mot. Dismiss at 41, *Lorillard*, *Inc. v.*

*FDA*, No. 11-440, 2012 WL 3542228 (D.D.C. Aug. 1, 2012) (cited by *Lorillard,*

*Inc.*, 2012 WL 3542228, at *3). The remainder of cases Appellants cited are

---

[16] Elanco's attempt to distinguish the remaining cases, Elanco's Br. 47 n.19, similarly fails. *See, e.g., Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1040 (D.C. Cir. 2002), *modified on reh'g*, 293 F.3d 537, 539 (D.C. Cir. 2002) (considering whether to waive exhaustion where agency required exhaustion by rule) (citing *Mobile Commc'ns Corp. of Am. v. FCC*, 77 F.3d 1399, 1404 (D.C. Cir. 1996) (explaining agency exhaustion rule, 47 C.F.R. § 1.110))); *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 899 (9th Cir. 1996) (refusing to require exhaustion despite U.S. Forest Service exhaustion provision, 36 C.F.R. § 218.12).

similarly on point.[17]

In short, neither Appellee provides any legal basis that would excuse the error of law committed by the district court. FDA's citizen petition provision does not satisfy the requirements of APA § 704 and can therefore be waived.

---

[17] *See, e.g., Idaho Watersheds Project*, 307 F.3d at 825-26 (holding that exhaustion is not required because "[i]f the regulations do not allow for the decision to be rendered inoperative pending appeal, then exhaustion of administrative remedies is not required"); *W. Watersheds Project v. U.S. Forest Serv.*, No. 07-151, 2007 WL 3407679, at *1-2 (D. Idaho Nov. 13, 2007) (holding exhaustion provision nonjurisdictional); *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 22 & n.2 (D.C. Cir. 2010) (since plaintiffs concede the more specific statute requires exhaustion, court explicitly addresses that *Darby* held exhaustion applies to non-APA cases); *Woodford v. Ngo*, 548 U.S. 81, 103 (2006) (Breyer, J., concurring in the judgment) (recognizing nonjurisdictional exhaustion requirements can be waived); *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 10 (D.C. Cir. 2015) (excused statutory exhaustion provision because relief provided by statute was not relief plaintiffs sought); *Mont. Wilderness Ass'n v. Fry*, 310 F. Supp. 2d 1127, 1138-39 (D. Mont. 2004) ("Because the appeal regulations do not require administrative appeal *or automatically stay a decision pending appeal*, the Plaintiffs are not required to exhaust administrative remedies prior to seeking judicial review.") (emphasis added); *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 822 (6th Cir. 2015) (procedural rules purporting to cabin a court's jurisdiction must plainly show that Congress imbued a procedural bar with jurisdictional consequences) (citing *U.S. v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015)); *Safari Club Int'l v. Jewell*, 76 F. Supp. 3d 198, 208 (D.D.C. 2014) (considering whether to waive regulatory exhaustion requirement); *Teva Pharm. USA, Inc. v. Sebelius*, 638 F. Supp. 2d 42, 51 (D.D.C. 2009), *rev'd on other grounds*, 595 F.3d 1303 (D.C. Cir. 2010) (treating 21 C.F.R. § 10.45 as nonjurisdictional); *see also Farm-to-Consumer Legal Def. Fund v. Sebelius*, No. 10-4018, 2010 WL 3304204, at *25 (N.D. Iowa Aug. 18, 2010) ("[F]ailure to exhaust administrative remedies is not a jurisdictional impediment" to suits challenging FDA action.) (citing *Teva Pharm.USA*, 638 F. Supp. 2d at 51).

**B.     The Court Abused Its Discretion in Declining to Waive Exhaustion.**

Should the Court determine that the citizen petition provision required exhaustion in this case, it can and should freely overturn the district court's decision not to waive the requirement here, because the court misapplied the underlying legal principles. *In re Arden*, 176 F.3d 1226, 1228 (9th Cir. 1999) ("An exercise of discretion based on an erroneous interpretation of the law can be freely overturned.") (internal quotation marks and citation omitted).

The district court's decision is framed by its overarching failure to adhere to the well-pled allegations set forth in Appellants' Complaints, as Fed. R. Civ. P. 12(b)(6) requires. *See* Appellants' Br. 47.[18]  As Appellants have explained, *id.* at 44-45, the court repeatedly mischaracterized Appellants' claims as ones for drug withdrawal under the FFDCA rather than NEPA compliance. Yet, in reality, Appellants ask the district court to declare that FDA has violated NEPA by approving these drugs without considering their environmental effects; to set aside the agency actions that did not comply with NEPA, as the APA requires; and to order FDA to comply with NEPA before reinstating such action. *See* ER194-196, 219, 221. Appellants base such requests on environmental harms resulting from FDA's approval of the drugs at issue, ER178-82, 208-09, both as a result of the

---

[18]  FDA does not dispute, and thus concedes, that the court erred by relying on material outside the Complaints. *See Clem*, 566 F.3d at 1182; Appellants' Br. 46.

harm ractopamine causes target animals, ER175-6, 184, 206-7, 210, and independently when released into the environment, *see, e.g.*, ER178-83, 185, 208-12. The court's disregard or disbelief of these well-pled factual allegations is inappropriate in the context of a motion to dismiss. *See Davis*, 691 F.3d at 1159. The district court's decision should be freely overturned.

### 1. FDA's Systematic Delays Are Relevant to Undue Prejudice.

FDA's systematic delays on citizen petitions can be—and in fact are—a source of hardship to Appellants. Appellants are not simply speculating as to FDA's response: FDA *routinely* misses the 180-day statutory deadline for responding to citizen petitions, and typically takes years to respond.[19] *See* Appellants' Br. 38-40; *cf. Dietary Supplement Coal., Inc. v. Sullivan*, 978 F.2d 560, 564 (9th Cir. 1992) (claiming delay of only one year). Delay on Appellants' petition—especially if the issue is as complicated as FDA would have this Court

---

[19] Appellants currently have three petitions pending before FDA, to which FDA's responses are between three and seven years overdue. *See* Citizen Pets. from CFS, et al., to FDA, Docket Nos. FDA-2009-P-0405-0001 (Aug. 12, 2009); FDA-2012-P-1252 (Dec. 20, 2012); FDA-2013-P-0351 (Mar. 15, 2013). The past citizen petitions highlighted by Appellees, FDA's Br. 14-15, are readily distinguishable from the petition that Appellants would be required to submit here. Those petitions were submitted to FDA *prior* to FDA taking final agency action, i.e. by issuing regulations for the labeling of genetically engineered foods or approving genetically engineered salmon. Indeed, in the case of genetically engineered salmon—which is considered an animal drug pursuant to FDA guidance—the Agency conducted an open NEPA process *before* approving the salmon, a prospect it now says was not possible.

believe—is all but certain.[20]

On this point, Appellees and Amicus Animal Health Institute (AHI) repeatedly proclaim that Appellants waited years to bring this litigation, *see, e.g.*, FDA's Br. 49, focusing the Court's attention on the earliest of the eighteen challenged final approvals, *see, e.g.*, Br. Amicus Curiae AHI (AHI's Br.) 3, to support their assertions of "long delay," Elanco's Br. 51 n.20. Indeed, Appellees hardly mention the other seventeen approvals, eight of which were approved just months before Appellants filed this case. ER217 (listing three Federal Register notices from 2014 approving eight of eighteen drugs at issue in this case). In fact, only three of the eighteen drug approvals challenged in this case date back to 2008. *See* ER216.

In reality, FDA is directly responsible for the length of time it took Appellants to file this case. As Appellants explained before the district court, ER047, because of the secret nature of animal drug approvals, Appellants brought this lawsuit when they uncovered the necessary facts to support their claims—facts they obtained through Freedom of Information Act (FOIA) requests and FOIA litigation—and no later. Appellants filed FOIA requests in March 2012 and

---

[20] Whether the length of FDA's delays in responding to specific citizen petitions is unreasonable, *see* FDA's Br. 49 (citing *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor*, 118 F.3d 205 (4th Cir. 1997)), is a fact-specific inquiry not before the district court, separate from the issue of whether FDA's systematic pattern of delay renders exhaustion futile in this case.

February 2013, and FDA failed to respond until Appellants filed litigation to compel record production. *See* Compl., *Animal Legal Def. Fund v. FDA,* No. 13-04622 (N.D. Cal. Oct. 7, 2013), ECF No. 1. For Appellees to now use FDA's own delay to justify further delaying action in this case, *see* Elanco's Br. 51*,* is simply absurd.

### 2. A Citizen Petition Would Not Redress the Injuries Appellants Alleged, nor Provide the Relief Appellants Sought, in Their Complaints.

Despite acknowledging the limits of its statutory authority, FDA still asserts that the district court can offer Appellants no more relief than FDA. *See* FDA's Br. 46. This is truly confounding in light of FDA's admission that it will not set aside the underlying approvals pending NEPA compliance, *see supra* n.11, which the district court can clearly do, *see Anderson*, 371 F.3d at 494.

The district court misunderstood this, and impermissibly read Appellants' Complaints as seeking drug withdrawal under the FFDCA, even though neither Complaint refers to that remedy. ER221. Based on an apparent misunderstanding of the distinction between the FFDCA and NEPA, the court mistakenly concluded that "[i]n response [to a citizen petition], the [A]gency may withdraw/vacate the FDA approvals—the remedy sought by [Appellants]—should it conclude that new evidence or changed circumstances require new NEPA review." ER014. In doing so, the court relied only on 21 U.S.C. § 360b(e)(1), which discusses drug

withdrawal on the basis of threats to target animal or human health, not environmental concerns. This is a fundamental misunderstanding and therefore misapplication of the statutory scheme, which this Court can freely overturn. *See In re Arden*, 176 F.3d at 1228.

Moreover, the evidence on which Appellants' Complaints rely is not new to the Agency, *see supra* pp. 6-7, and an administrative record already exists for each of the eighteen challenged approvals, *see* Appellants' Br. 32. FDA glosses over this crucial distinction, suggesting that even if it cannot grant the relief Appellants seek, petitioning would at least create an administrative record, such that petitioning is not entirely futile. FDA's Br. 47.[21] Once again, this argument is based on the false premise that Appellants lack a final agency action to challenge, and thus petitioning is necessary to create an administrative record. This is simply not true, as Appellants have explained at length. *See*, *e.g.*, *supra* pp. 4-8, 12; Appellants' Br. 29, 32. The court's misunderstanding renders its decision an abuse of discretion.

### 3. FDA's Policy on Categorical Exclusions Is Evidence that It Has Predetermined the Issue.

FDA downplays the import of its policy on categorical exclusions by

---

[21] On this point FDA cites to a case that was expressly limited to its facts, in which, unlike here, the plaintiffs failed to participate in the administrative process available to them. *See* FDA's Br. 47 (citing *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 595 (8th Cir. 2013)).

vaguely asserting that it "generally tracks" FDA's regulations. FDA's Br. 51.

However, FDA's policy differs from the regulation in a key respect that is fatal to

this argument: the regulation requires that a drug applicant certify no extraordinary

circumstances exist that would make the categorical exclusion inapplicable, while

the policy states that FDA will grant a categorical exclusion *"regardless of*

*whether extraordinary circumstances exist.*" *See* FDA's Br. 45. Applying a

categorical exclusion without examining whether extraordinary circumstances exist

violates NEPA. *See, e.g., Safari Club Int'l v. Jewell*, 960 F. Supp. 2d 17, 81-83

(D.D.C. 2013). Here, FDA has gone a step further by creating a blanket

authorization for categorical exclusions regardless of extraordinary circumstances.

This is not merely negligent administration of NEPA, but an affront to its

principles. A citizen petition demonstrating that a categorical exclusion is not

appropriate is futile when FDA grants categorical exclusions regardless of whether

extraordinary circumstances exist. *See* Appellants' Br. 41-45.

### 4. Judicial Review, Not a Citizen Petition, Would Serve the Purposes of Exhaustion Here.

When the smoke clears from Appellees' attempts to distract the Court with

misrepresentations of the Complaints' well-pled allegations, it becomes clear that

the purposes of exhaustion would not be served by requiring Appellants to file a

citizen petition here. In some instances, before some agencies, proceeding through

court may be a more time- and resource-consuming endeavor than filing a simple

administrative appeal or requesting reconsideration of a lower agency decision. *See Woodford*, 548 U.S. at 103 (Breyer, J., concurring in the judgment) ("Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court."). But Appellees ask Appellants to clear an entirely different hurdle—one that is not legally required, and one that would indefinitely delay review of final agency action and resolution of time-sensitive issues. *See Lorillard,* 2012 WL 3542228, at *3. If validated by this Court, FDA's approach to exhaustion provides a roadmap for every agency to indefinitely block judicial review of its final agency actions while those actions are in effect and causing real harm. *See* Appellants' Br. 23, 31. Appellees should not be permitted to stall resolution of this issue any further, while these drugs continue to impact the environment.

The issues presented by this case are ripe for judicial review without any further action on the part of Appellants or FDA. Each of the drug approvals at issue are final agency actions, which are immediately reviewable without any further administrative action, *see* ER218; an administrative record already exists in this case without any further administrative action, *see* ER220; and initiating a new administrative process prolongs the issue indefinitely, while animal drugs that might never have been approved if FDA had complied with the law continue to pollute the environment, irreparably, *see* ER165-96, 197-222. Given FDA's ability

(and the likelihood) of trapping Appellants' issues in indefinite limbo, judicial review in this case, at this point, on the existing record, is the most efficient means of resolving these issues.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order dismissing this case for failure to exhaust administrative remedies and remand for a ruling on the merits.

DATED: October 26, 2016

Respectfully submitted,

/s/ Paige M. Tomaselli
PAIGE M. TOMASELLI
CRISTINA R. STELLA
Center for Food Safety
303 Sacramento Street, 2nd Street
San Francisco, CA 94111
T: (415) 826-2770 / F: (415) 826-0507
Emails: ptomaselli@centerforfoodsafety.org
         cstella@centerforfoodsafety.org

PETER A. BRANDT
LAURA J. FOX
The Humane Society of the United States
1255 23rd Street, NW
Washington, DC 20037
T: (202) 676-2354 / F: (202) 676-2357
Emails: pbrandt@humanesociety.org
         lfox@humanesociety.org

HANNAH M.M. CONNOR
The Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
T: (202) 681-1676
Email: hconnor@biologicaldiversity.org

MARIO MARTINEZ
Martinez, Aguilasocho & Lynch, APLC
P.O. Box 11208
Bakersfield, CA 93389
T: (661) 859-1174
Email: mmartinez@farmworkerlaw.com

*Attorneys for Plaintiffs-Appellants*

**Form 8.    Certificate of Compliance Pursuant to 9th Circuit Rules 29-2(c)(2) and (3), 32-2 or 32-4[1] for Case Number** <u>15-17510</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (check appropriate option):

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b). The brief is 8,341 words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☒ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated _____. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Circuit Rule 32-2(a) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Circuit Rule 29-2(c)(2) or (3) and is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4. The brief is _____ words or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant    s/ Paige M. Tomaselli    Date   Oct 26, 2016

("s/" plus typed name is acceptable for electronically-filed documents)

---

[1] If filing a brief that falls within the length limitations set forth at Fed. R. App. P. 32(a)(7)(B), use Form 6, Federal Rules of Appellate Procedure.    *(Rev.7/1/16)*